# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| STEVEN W. PRYOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil No. 11-01254-CV-NKL-SSA |

## ORDER

Plaintiff Steven Pryor challenges the Social Security Commissioner's denial of his application for disability insurance benefits under Title II, and for social security income benefits under Title XVI, of the Social Security Act, 42 U.S.C. §§ 401, *et. seq*.

Pryor argues that the Administrative Law Judge ("ALJ") erred by: (a) failing to give controlling weight to treating physician Dr. Ali; (b) giving weight to the opinion of state agency physician Dr. Wantuck; (c) failing to discuss the third-party observations of D. McGuire; (d) failing to discuss or assign weight to the opinions of state agency consultant Dr. Sutton; (e) failing to support the assessed residual functional capacity ("RFC") with medical evidence; and (f) deciding disability based on a hypothetical to a vocational expert that did not accurately reflect Pryor's impairments. Because the Court finds persuasive some of these arguments, the Court reverses the ALJ's decision and remands for further consideration.

1

**I.      Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Pryor filed for disability in February 2005, claiming sarcoidosis, chronic obstructive pulmonary disease (COPD), a subdural hematoma with encephalomalacia, degenerative disc disease of the cervical spine, syncopal episodes, Hepatitis C, peripheral vascular disease, depression, and memory problems.

On 9/26/08, Pryor began seeing Dr. Ali. (Tr. 403). Pryor reported he was usually dizzy when standing up and sitting up. He also had chest pressure and shortness of breath. (Tr. 403). There were wheezes on examination and abnormal heart findings. (Tr. 404). The assessment included chest pain, shortness of breath, sarcoidosis, increased calcium, subdural hematoma, questionable seizure/versus syncopal episode, alcohol abuse, amphetamine abuse, and tobacco use. (Tr. 405). A stress test, spirometry, and other testing were ordered. On 10/7/08, Pryor had excessive dyspnea and shortness of breath and a stress test was discontinued. (Tr. 365). Pryor also underwent a myocardial perfusion scan, myocardial wall motion study, and myocardial ejection fraction. Mild left dilatation was noted during stress but no reversible ischemia. (Tr. 421). Severe fatigue and shortness of breath was reported during testing. (Tr. 421). Dr. Ali was present for the stress testing. (Tr. 421). Myocardial ejection fraction was calculated at 59%. (Tr. 421). Pryor also began wearing a Holter monitor on 10/7/08 at Dr. Ali's request. (Tr. 424).

---

[1] Portions of the parties' briefs are adopted without quotation designated.

Someone completed a physical residual functional capacity assessment form on 5/11/09. (Tr. 472-478). That individual did not examine or treat Pryor. In the opinion, the author found that Pryor can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours of an 8 hour workday, and sit about 6 hours in an 8 hour workday. (Tr. 473). Pryor could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. (Tr. 475). Th assessment limited Pryor's exposure to fumes, dusts, odors, gases, poor ventilation, etc., and hazards such as machinery and heights. (Tr. 476). The SDM (single decision maker) block is checked. (Tr. 478). The form bears the typed name of a Dr. Wantuck. (Tr. 478).

Dr. Geoffrey Sutton completed a psychiatric review technique form on May 12, 2009. Dr. Sutton checked a box indicating Pryor's mental impairments to be not severe (Tr. 479), checked a box indicating psychological or behavioral abnormalities associated with a dysfunction of the brain as evidenced by a memory impairment (Tr. 480), checked a box indicating behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system (Tr. 485), and checked boxes indicating Pryor to have mild restriction of activities of daily living, no difficulties maintaining social functioning, and no difficulties maintaining concentration, persistence, or pace. (Tr. 487).

On May 24, 2009, Pryor went to the emergency room at Nevada Regional Medical Center with right leg pain and swelling. (Tr. 498). Pryor appeared in mild distress and examination revealed pedal edema and multiple varicosities. (Tr. 499). Bactrim, and Vicodin were given and Pryor was instructed to elevate his leg. (Tr. 499). The assessment

3

was cellulitis and possible spider bite. (Tr. 499). On 6/23/09, Pryor was seen at Nevada Regional Medical Center in the emergency room, with pedal edema and foot pain. (Tr. 496). On objective examination, there was pedal edema, and multiple varicosities. (Tr. 497). Pryor was given HCTZ for his blood pressure and Vicodin for pain. (Tr. 497). Pryor saw Dr. Ali on 8/11/09. (Tr. 517).

On August 27, 2009, Dr. Ali completed a Residual Functional Capacity form. He opined Pryor to be capable of lifting 25 pounds frequently. (Tr. 490). Pryor's ability to sit is unlimited, but he can stand/walk less than one hour at a time and less than one hour total during an 8 hour workday. (Tr. 490). Pryor needs to lie down, recline, and elevate his feet more than 4 hours in an 8 hour workday. (Tr. 490). Pryor can use both hands for simple grasping but cannot use his right hand for repetitive fine manipulation. Pryor cannot use either upper extremity to push and pull arm controls, or the lower extremities to push and pull leg controls repeatedly, or use his hands/arms for activities requiring repetitive motion. Pryor would be unable to perform jobs requiring bilateral manual dexterity. (Tr. 490). Pryor has believable complaints of pain which is frequently debilitating. (Tr. 491). The pain is due to cervical spinal stenosis. (Tr. 492). He has believable complaints of fatigue which is frequently debilitating. (Tr. 491). Pryor has sensory problems of eye focusing, dizziness, lethargy, poor coordination (eye, hand, feet), and numbness/decreased sensation in the extremities. (Tr. 491). Pryor has depression and irritability associated with his impairments. (Tr. 491). Pryor's ability to deal with the stress of even a "low stress" job such as getting to work on time and regularly, having work performance supervised, remaining in the

workplace for a full day, dealing with co-workers and supervisors appropriately, etc., is poor or none. (Tr. 491). Pryor's impairments or treatment would cause him to be absent more than 3 times per month. (Tr. 491). Pryor is never able to squat, stoop, crouch, crawl, and kneel. He can occasionally bend, climb, reach, and maintain balance. (Tr. 492). Pryor has a moderate limitation against unprotected heights, being around moving machinery, and driving automotive equipment. (Tr. 492). Pryor does not have a substance abuse diagnosis. (Tr. 493). Dr. Ali's opinions are based on clinical and laboratory findings of anemia, subdural hematoma on CT, focal atrophy in the left parietal lobe cortex on CT, cervical stenosis on CT, sarcoidosis, and seizure disorder. (Tr. 493).

On November 25, 2009, Pryor was seen by Dr. Mokhtar in follow-up for his sarcoidosis. (Tr. 539). On examination, Pryor had bilateral lower limb edema. (Tr. 539). Pulmonary function tests showed an 11% decline of the DLco since last November. (Tr. 538). The impression was sarcoidosis, appearing to be Stage II with hilar lymphadenopathy and abnormal interstitial findings. Liver function tests showed mild elevation. Abnormal pulmonary function tests with low DLco, mediastinal lymphadenopathy, abnormal CT of the chest, and shortness of breath. (Tr. 538).

Pryor filed for disability in February 2009. After a hearing, the ALJ issued a decision finding Pryor had the following severe impairments: sarcoidosis, chronic obstructive pulmonary disease (COPD), a subdural hematoma with encephalomalacia, mild degenerative disc disease of the cervical spine, syncopal episodes, and alcohol abuse. The ALJ concluded Pryor's Hepatitis C, peripheral vascular disease, and depression to be non-severe. The ALJ

5

found Pryor's testimony to be not credible. The ALJ established the following relevant limitations in Pryor's RFC: light work; standing or walking 6 hours of an 8 hour workday; sitting 6 hours of an 8 hour workday; avoiding more than moderate exposure to pulmonary irritants, work hazards, and temperature extremes; limited to simple, unskilled work. The ALJ posed a hypothetical to a vocational expert containing all of these limitations except the limitation to simple, unskilled work. The vocational expert responded that Pryor was capable of performing multiple "light" and "sedentary" jobs, and the ALJ found Pryor not disabled.

**II.     Analysis**

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007).

**A.     Whether the ALJ Erred by Failing to Give Controlling Weight to Treating Physician Dr. Ali**

The ALJ determined that the opinion of treating physician Dr. Ali was not entitled to substantial weight. Pryor argues that this was error and that the ALJ should have given controlling weight to the opinion of Dr. Ali. Normally, a court should give substantial weight to a treating physician's opinion of a claimant's limitations. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004). But an ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Medhaug v. Astrue*, 578 F.3d 805,

815 (8th Cir. 2009) (internal quotes omitted).

Pryor argues that Dr. Ali's opinion is consistent with the opinions of Dr. Robbie and Dr. Moktar. But the ALJ did not claim that Dr. Ali's opinion was inconsistent with the opinions of these doctors, and the Commissioner also does not appear to argue this point. Rather, the ALJ found, and the Commissioner argues, that Dr. Ali's opinion is internally inconsistent. The Commissioner points out that Dr. Ali stated both that Pryor can sit for eight hours during a work day and that Pryor needs to lie down for four hours during a work day. Pryor responds that these findings are consistent because Dr. Ali actually stated that Pryor needed to "lie down, recline, or elevate their feet" for four hours, and that Pryor could recline or elevate his feet while sitting. The Court agrees with Pryor that these findings are consistent by any fair assessment.

The Commissioner also points out, as did the ALJ, that Pryor testified to a greater ability to stand than was reflected in Dr. Ali's findings. Pryor has not addressed this argument in his briefing, and the Court agrees that it supports the ALJ's assessment of the testimony of Dr. Ali. The ALJ also found that the restrictions assessed by Dr. Ali were largely based on Pryor's own assertions and that Pryor had been found not credible. Pryor does not appear to refute the ALJ's conclusion that Pryor is not credible.

The ALJ also found that these restrictions were not supported by objective medical findings in Dr. Ali's treating records. The ALJ pointed to records of several physical examinations of Pryor that were "near normal." [Doc. # 3-3 at 22]. Pryor argues that Dr. Ali performed several objective tests on Pryor in order to form his opinion, including a stress

7

test, a Holter monitor, testing for Hepatitis C, cholesterol testing, and a brain MRI. But many of these objective tests are largely unrelated to the functional restrictions assessed by Dr. Ali. Further, Pryor has not explained why these test results are inconsistent with the "near normal" findings pointed out by the ALJ. Pryor also states that Dr. Ali found "wheezes and abnormal cardiovascular findings of 1 of 6 on virtually every objective examination." [Doc. # 9 at 3]. But Pryor does not explain how these findings are not "near normal" or that they would require more strict limitations than those ultimately assessed by the ALJ.

For all of these reasons, the Court finds that substantial evidence existed for the ALJ's decision to find Dr. Ali's opinion internally inconsistent and not fully credible and to refuse to give substantial weight to those opinions.

### B. Whether the ALJ Erred by Giving Weight to the Opinion of State Agency Physician Dr. Wantuck

Pryor next argues that it is unclear whether the state agency opinion relied on by the ALJ was provided by Dr. Wantuck or a non-medical source since the SDM, or single decision maker, box was checked on Dr. Wantuck's opinion. The Commissioner points to records reflecting that Dr. Wantuck was requested to complete this evaluation (Tr. 180) and that the evaluation was signed by Dr. Wantuck. (Tr. 478). Pryor, in his reply brief, does not respond to these claims. The Court agrees that Dr. Wantuck provided the opinion relied on by the ALJ.

Pryor argues that the ALJ should only have given Dr. Wantuck's opinion little or no weight because Dr. Wantuck did not treat or examine Pryor and because Dr. Wantuck issued

his opinion more than a year before the ALJ's decision. Pryor points out that in the meantime, Pryor visited the emergency room more than once for pedal edema and pain and Pryor's pulmonary function tests showed deterioration. The Commissioner points out that the ALJ specifically acknowledged in his decision that Dr. Wantuck was not an examining physician and also stated that the only evidence submitted after Dr. Wantuck's opinion that supported a change in Dr. Wantuck's conclusions was a finding that Pryor should not be exposed to extreme temperatures.

The Court cannot currently determine whether substantial evidence exists for the weight given Dr. Wantuck's opinion by the ALJ, since the ALJ failed to specifically discuss any of the medical evidence developed after Dr. Wantuck issued his opinion. Pryor's treatment for pain and edema after Dr. Wantuck's opinion, along with an eleven percent decline of Dlco, may well be "material inconsistences or ambiguities in the evidence in the case record", and the ALJ is required to explain how such inconsistencies are resolved. SSR 96-8P. Because the Court finds remand necessary for other reasons explained below, the Court instructs the ALJ on remand to discuss the medical evidence developed after Dr. Wantuck's opinion and resolve any inconsistencies.

### C.  Whether the ALJ Erred by Failing to Discuss the Third-Party Observations of D. McGuire

Pryor argues that the ALJ erred by failing to address in his decision the third-party statement from Social Security employee D. McGuire that Pryor had difficulty breathing and a raspy voice during an interview. Pryor argues that the ALJ was required to consider this

9

evidence under several regulations. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including...observations by our employees..."). The Commissioner does not claim that the ALJ discussed this information in his decision, but argues instead that the ALJ had the opportunity to observe these same qualities at Pryor's hearing. The Commissioner also agues that simply because the ALJ did not discuss D. McGuire's statement does not mean that the ALJ did not consider the statement. Both of these arguments fail under the reasoning of *Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008), which held that an "ALJ's failure to refer in his decision to [statements of lay persons regarding a claimant's condition] is another reason supporting our decision to remand." Further, the Commissioner has not argued that the evidence in D. McGuire's statement is discredited by the same evidence the ALJ relied on in discrediting Pryor's testimony, as in *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011). The Court finds that this deficiency, combined with the other deficiencies identified in this Order, necessitates remand.

### D. Whether the ALJ Erred by Failing to Discuss or Assign Weight to the Opinions of State Agency Consultant Dr. Sutton

Pryor also argues that the ALJ erred by failing to discuss or assign weight to the opinion of state agency consultant Dr. Sutton, who completed a psychiatric review technique form on Pryor, in violation of 20 C.F.R. § 404.1527(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant...").

10

The Commissioner merely responds that Dr. Sutton discussed a non-severe impairment, which the Commissioner argues is consistent with the ALJ's decision, and that any error is therefore harmless. But Pryor points out that the ALJ was required to consider even non-severe impairments, which "may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." SSR 96-8p. The Commissioner has failed to contest error and has failed to show that it is harmless. Remand is thus appropriate.

### E. Whether the ALJ Erred by Failing to Support the Assessed Residual Functional Capacity ("RFC") with Medical Evidence

Pryor first repeats his argument that the opinion of Dr. Wantuck may actually have been completed by a non-medical source, and that to the extent the ALJ relied on Dr. Wantuck's opinion in forming an RFC, that portion of the RFC was not supported by medical evidence. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). But the Court has already rejected the argument that this opinion came from a non-medical source. The Court thus rejects this argument as well.

Pryor also argues that the ALJ erred by failing to explain why the RFC assessed limited Pryor to "more than moderate exposure" to work hazards and environmental factors, while Dr. Wantuck's opinion limited Pryor to "even moderate exposure" to the same. [Doc. # 5 at 14]. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR96-8p. The Commissioner merely argues that the ALJ was not required to adopt Dr. Wantuck's opinion as a whole and

11

that substantial evidence exists for the ALJ's finding. This argument does not address the ALJ's failure to discuss *why* he did not adopt this portion of Dr. Wantuck's opinion and what medical evidence the ALJ relied on for this particular limitation. Thus, remand is appropriate on this point as well.

### F. Whether the ALJ Erred by Deciding Disability Based on a Hypothetical to a Vocational Expert that did not Accurately Reflect Pryor's Impairments

Pryor argues that the ALJ erred in relying on testimony by a vocational expert that was based on an incomplete hypothetical by the ALJ. "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994). Pryor first argues that the ALJ's hypothetical omitted the ALJ's finding in Pryor's RFC that Pryor is limited to "simple, unskilled work." [Doc. # 3-3 at 18]. The Commissioner admits that the ALJ omitted this limitation from his hypothetical, but claims that the error was harmless because a significant number of jobs would still be available to Pryor even if the ALJ included this limitation. Because the Court has already determined that remand is appropriate, the Court instructs the ALJ to correct this error by including the limitation to simple unskilled work in any future hypotheticals to vocational experts.

Pryor also argues that the ALJ erred in limiting Pryor only to "more than moderate exposure" to hazards without explaining why he differed from Dr. Wantuck's limitation to "even moderate exposure" to hazards, and that the ALJ's hypothetical was also flawed for reflecting that error. Because the ALJ must reconsider this finding on remand, the Court

12

cannot now determine how this limitation should appear in a hypothetical to a vocational expert.

## III. Conclusion

Accordingly, it is hereby ORDERED that Steven Pryor's Petition [Doc. # 1] is GRANTED. The decision of the ALJ is REVERSED and remanded for reconsideration consistent with this Opinion.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 23, 2012
Jefferson City, Missouri

13